ESTATE OF FRANKLIN LEWIS HAZELTON, DECEASED, MARY HAZELTON, ADMINISTRATRIX WITH THE WILL ANNEXED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58284. Filed December 31, 1957.

*James J. Robison, Esq.*, for the petitioner.
*Nelson P. Rose, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined a deficiency in gift tax against the decedent for the year 1951 in the amount of $8,846.27.

The question in the case is, did the decedent make a transfer in 1951 taxable under section 1000 of the Internal Revenue Code of 1939, and if he did, what is the net value of the transfer subject to the gift tax? The case was submitted without trial under Rule 30, upon a stipulation of facts and the depositions of two witnesses. The stipulated facts are found accordingly.

### FINDINGS OF FACT.

On August 17, 1935, Frank P. Hazelton created trust No. 1157 by an irrevocable agreement with the Toledo Trust Company. The said trust named settlor's son, Franklin Lewis Hazelton, as principal beneficiary, and named three persons who would constitute an advisory committee, with provision for their succession. The first three paragraphs of article II provided as follows:

#### Beneficiaries.

The principal beneficiary of this trust shall be Donor's son, Dr. Franklin L. Hazelton, now residing at 36 Walker Avenue, Bradford, Pennsylvania, and during his lifetime, the Trustee shall pay to him, from time to time, such part of the annual net income, the accumulated net income, and the principal of the Trust Property as the Advisory Committee may, in its uncontrolled discretion and at any time or times, deem proper for his suitable comfort and support and conducive to his general welfare, and shall direct in writing to the Trustee.

In addition to the payments out of income and/or principal of the Trust Property to Donor's said son herein authorized, the Advisory Committee may, at

any time and from time to time during the life of said son, whenever it shall determine it to be needful or desirable for their comfort, support, or education, or conducive to their general welfare, direct the payment to the lineal descendants of Donor's said son, whether adopted or of the body, of such amounts of either income and/or principal, as the Advisory Committee, in its uncontrolled discretion, may deem proper, or may direct the payment of not more than one-third (1/3) of the annual net income to the spouse of said son, whenever it shall determine it to be needful and desirable for her suitable comfort and support or conducive to her general welfare; and the Trustee shall make payment accordingly upon written direction of the Advisory Committee.

Upon the death of Donor's said son, the Advisory Committee, at any time and from time to time whenever it shall determine it to be needful or desirable for the suitable comfort, support, or education, or conducive to the general welfare of any such lineal descendants, may direct the payment to the lineal descendants of Donor's said son, whether adopted or of the body, of such amounts as the Advisory Committee, in its uncontrolled discretion, may deem proper and/or whenever it shall determine it to be needful and desirable to her suitable comfort and support, or conducive to her general welfare, may direct the payment of not more than one-third (1/3) of the annual net income of said Trust Property to the widow of Donor's said son, if she be undivorced from him at the time of his death; provided however that if Donor's said son shall die without leaving lineal descendants, such widow shall become entitled to receive one-third (1/3) of such annual net income without action of the Advisory Committee.

In subsequent paragraphs of the instrument provision was made for distribution of the remainder to the sister of the principal beneficiary, Florence Hazelton Hanley, and her children and others in the event of certain contingencies. The trust instrument also contained a clause authorizing the deposit of additional securities or property with the trustee by the donor or any interested person which, when so deposited, would become a part of the trust property and disposed of under the terms of the trust.

In 1937 Franklin Lewis Hazelton transferred to the trustee of trust No. 1157 certain assets owned by him, including 948 shares of Owens-Illinois Glass Company stock. On March 15, 1938, a gift tax return was filed by Franklin Lewis Hazelton setting forth the transfer, showing the gross value of the assets transferred as $87,790. He claimed a deduction for the interest in him created by trust No. 1157 during his life, using a factor of 0.59129 for the intervening estate, producing a factor of 0.40871 for the net value of the transfer. On audit of the return, the respondent determined that the gross value of the assets was understated by $2,844 and recomputed the net value of the transfer as $37,043.02, using the factor for reduction claimed in the return to arrive at the net value of the transfer.

Sometime in the year 1942 Franklin married Mary Hazelton and subsequent to this marriage he became concerned about her welfare in the event of his death. Franklin was born August 9, 1894, and

Mary was 18 years younger than Franklin; and trust No. 1157 provided that after Franklin's death without issue she would be entitled to one-third of the income of the trust until 20 years after Franklin's death. Franklin repeatedly requested the trustee and the advisory committee to distribute to him assets of the said trust to enable him to make provision for Mary, and his request was refused. Sometime prior to 1949 he was forced to retire from his practice as an osteopath because of failing eyesight. His marriage was a very happy one and he became more and more concerned about making provision for Mary. Finally the advisory committee, after declining to make an outright distribution of the assets of trust No. 1157 to Franklin, agreed to distribute 800 shares of the Owens-Illinois Glass Company stock which had originally been contributed to the trust by Franklin in 1937, to a new trust which would be identical in terms to trust No. 1157 with the exception that, instead of a limitation of one-third of the income to Franklin's wife, the income and principal might be given to the wife as the committee, in its uncontrolled discretion, might determine. The advisory committee only consented to do this after first securing the consent of Florence Hazelton Hanley, the principal contingent beneficiary of trust No. 1157.

Acting pursuant to this arrangement, Franklin set up a new trust known as trust No. 2429, wherein Franklin appeared as the donor with all the provisions of trust No. 1157 with the exception of the clause limiting the payment to Franklin's wife to one-third of the income. Article II of trust No. 2429 had the same clause with respect to the principal beneficiary, being in this case the donor, Franklin L. Hazelton, and it then provided that payments out of income or principal could be authorized by the advisory committee in its uncontrolled discretion to the spouse of the donor and if she survived him, such payments could be made during her life. This trust was executed on November 1, 1950, and Franklin transferred $100 to this trust. On May 15, 1951, the Toledo Trust Company, as trustee of trust No. 1157, delivered to itself, as trustee of trust No. 2429, 800 shares of Owens-Illinois Glass Company stock, all of which shares were among the shares transferred by Franklin in 1937 to trust No. 1157. The then value of the 800 shares was $62,200. This transfer was made with the assent of Florence Hazelton Hanley, the principal contingent beneficiary of trust No. 1157.

On March 4, 1952, a gift tax return was prepared by the Toledo Trust Company on behalf of Franklin and his wife, Mary, and it was signed by them on March 6, 1952, disclosing the transfer above described. Mary signed the consent to have any and all taxable gifts

considered as made one-half by her. The return claimed no tax due on the transfer and it was filed with the then collector of internal revenue for the tenth district of Ohio at Toledo, Ohio. Franklin died May 5, 1955, and his wife, Mary, was appointed administratrix of his estate.

Respondent determined a deficiency based upon the net taxable gift of $62,200, the value of the 1951 transfer, plus some other items growing out of the 1937 transfer. The only issue presented here is with respect to respondent's determination of the deficiency based upon the 1951 transfer of the taxable gift of the value of $62,200. No issue is presented with respect to the other items of deficiency and they can be taken care of under Rule 50.

### OPINION.

Respondent's argument for the imposition of the gift tax is stopped at the very threshold of the case. Decedent made no gift at all within the provisions of the gift tax law. Section 1000, I. R. C. 1939, imposes a tax "upon the transfer * * * by any individual * * * of property by gift." A completed gift for gift tax purposes requires a transfer to the donee whereby the donor relinquishes dominion and control over property that is the subject matter of the gift.

It is true decedent sought from the advisory committee a substantial disbursement of the trust property to him which would enable him to make a gift to his wife. But he did not get such disbursement. At no time in the year involved did decedent have any dominion or control over the 800 shares of Owens-Illinois stock. No transfer was made by him of this stock. The transfer was made by the trustee at the direction of the advisory committee under trust No. 1157. The situation is somewhat like the one that existed in *Matthew Lahti*, 6 T. C. 7, where there was a transfer of principal assets from one trust, set up by the husband, where he had a life interest, to another trust, set up for the sole (life income) benefit of a wife. We held, since the first trustees had sole discretion to make principal or income payments to persons including the wife, the transfer was made under that authority and no gift tax resulted. It is significant that in the *Lahti* case the petitioner actually gave up a life interest because of the transfer and we held no gift tax consequences resulted from the transfer. Here the transfer was by the trustees, and it was from one trust where decedent was the principal beneficiary for life to another trust where decedent was again principal beneficiary for life. We recognize that the gift tax reaches indirect gifts but we cannot see how this transfer

can ever be said to be a transfer of decedent's property. The only interest he had in the property before the transfer was not transferred. Under neither trust instrument could the wife receive a payment out of income or corpus until decedent's entire interest was satisfied.

It is also true decedent influenced the transfer of the stock from trust No. 1157 to trust No. 2429, and he facilitated the transfer by setting up trust No. 2429, and the transfer resulted in his wife's receiving an increased interest in said stock. But this transfer resulted in no decrease in decedent's interest in the stock over what he had before. Before the transfer this stock was part of the corpus of a trust where decedent was named the principal beneficiary as to the income and corpus to be spent for his welfare and support so long as he lived, in the uncontrolled discretion of the advisory committee. After the transfer of the stock it was part of the corpus of a trust where decedent was named the principal beneficiary as to income and corpus to be spent for his welfare and support so long as he lived, in the uncontrolled discretion of the same advisory committee. Decedent did not part with anything. The possible increased interest of decedent's wife by trust No. 2429 which removed the one-third of income ceiling as to her interest, was not something decedent parted with. Such increased interest of his surviving spouse might serve to lessen the interest of others who took after decedent in trust No. 1157. It is significant here that the advisory committee sought and obtained the consent of the principal contingent beneficiary before making the transfer. The committee recognized that those who would take after decedent, the principal beneficiary, would be the only ones who could be said to relinquish anything by the transfer.

Both trusts named decedent as the "principal beneficiary * * * during his lifetime." It is perfectly apparent from all of the undisputed facts that it was the removal of the one-third of income ceiling payments to decedent's widow, in trust No. 1157, that was the objective to be gained by the transfer. Decedent's whole concern was the amount his wife would receive after his death. So long as the only interest he had, namely, a primary life interest, was not decreased by the transaction he cannot be said to have parted with anything. He made no gift within the meaning of section 1000, I. R. C. 1939. The wife's additional interest was gained at the expense of someone else—we think the contingent beneficiaries, but we need not decide. The record indicates there was some adjustment with respect to decedent's gift tax liability with respect to the 1937 gift, which is not contested.

Reviewed by the Court.

*Decision will be entered under Rule 50.*